FILED
07/13/2022
Clerk of the
Appellate Courts

IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
May 24, 2022 Session

**ALINA F. SHERLIN v. STATE OF TENNESSEE**

**Appeal from the Criminal Court for Bradley County**
**No. 19-CR-522      Andrew M. Freiberg, Judge**

————————————————————

**No. E2021-00770-CCA-R3-PC**

————————————————————

Alina F. Sherlin, Petitioner, was indicted for first degree murder in 2013. After a jury trial, Petitioner was convicted of second degree murder and sentenced to 15 years in incarceration. Her conviction and sentence were affirmed by this Court on appeal. *State v. Alina Frankie Sherlin*, No E2017-01225-CCA-R3-CD, 2018 WL 3561728, at *1 (Tenn. Crim. App. July 24, 2018), *perm. app. denied* (Tenn. Dec. 7, 2018). Petitioner sought post-conviction relief on the basis of ineffective assistance of counsel and also challenged the search and seizure of her property. After a hearing, the post-conviction court denied relief. Petitioner appealed to this Court. After a review, we affirm the denial of post-conviction relief.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

TIMOTHY L. EASTER, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS, P.J., and JILL BARTEE AYERS, J., joined.

Benjamin McGowan, Chattanooga, Tennessee (at hearing); and Brennan M. Wingerter, Assistant Public Defender, Tennessee District Public Defenders Conference (on appeal), Franklin, Tennessee, for the appellant, Alina F. Sherlin.

Herbert H. Slatery III, Attorney General and Reporter; Katherine C. Redding, Senior Assistant Attorney General; Stephen D. Crump, District Attorney General, for the appellee, State of Tennessee.

**OPINION**

In 2013, a Bradley County grand jury indicted Petitioner for first degree murder for the shooting death of her boyfriend, Robert Julian. *State v. Alina Frankie Sherlin*, 2018

WL 3561728, at *1. Petitioner, a paralegal, had been dating the victim for about 18 months prior to his death. *Id.* At trial, Petitioner relied on a theory of self-defense and argued that she was the victim of domestic violence. The jury ultimately convicted Petitioner of second degree murder. On direct appeal, Petitioner raised 12 issues, including multiple evidentiary issues and a challenge to the sufficiency of the evidence. *Id.* This Court affirmed the conviction on appeal and the supreme court denied permission to appeal. *Id.* at *14.

On December 9, 2019, Petitioner filed a petition for post-conviction relief. In that petition, she set forth 12 different allegations of ineffective assistance of counsel and complained that the search and seizure of her property was unconstitutional. The post-conviction court determined that the petition was timely and that the petition presented a colorable claim. Petitioner filed a supplement to the petition for post-conviction relief on May 4, 2020, adding an additional allegation of ineffective assistance of counsel. Specifically, with both the initial and supplemental petition, Petitioner complained that trial counsel: (1) failed to challenge the illegal seizure of Petitioner's property; (2) failed to fully investigate defenses and evidence; (3) failed to seek suppression of Petitioner's statements; (4) failed to adequately meet with Petitioner; (5) failed to seek disqualification of the district attorney; (6) failed to seek a continuance; (7) failed to make an offer of proof with regard to testimony about gangs; (8) failed to object to statements made by the State during opening statements; (9) failed to object to statements made by the State during closing argument; (10) failed to object to hearsay and/or object to the admission of medical records; (11) failed to object to the testimony of James Hybarger, an unavailable witness; (12) failed to interview a mental health professional with regard to battered spouse syndrome; and (13) failed to communicate a plea offer to Petitioner. Petitioner also alleged that the search and seizure of her property was unconstitutional.

After several continuances and delays, the post-conviction court held an evidentiary hearing on May 7, 2021. Petitioner testified at the hearing that she was last employed as a paralegal at trial counsel's firm. Petitioner was a paralegal for 28 years and was familiar with the legal system. She retained trial counsel to represent her at trial.

Petitioner testified that she was not "[t]o [her] knowledge" given information about a plea offer from the State prior to trial. Petitioner knew that trial counsel "had attempted to reach a plea offer" but trial counsel told Petitioner that the State was "unable to offer" a deal "at the direction of" the district attorney. Petitioner acknowledged that she received a letter from trial counsel dated September 18, 2018, after her conviction, in which trial counsel expressed his regret about the outcome of the trial but that he "believed that a plea to voluntary manslaughter was the best alternative for [Petitioner]." Petitioner was "taken back" when she received the letter because she claimed she was unaware of an offer to plea to voluntary manslaughter.

With regard to other aspects of communication with trial counsel, Petitioner complained that she "really didn't have meetings" with trial counsel. She expected trial counsel to explain how things would happen at trial and offer information about how to testify. She expected "a lot of guidance" because of trial counsel's extensive experience. She recalled trial counsel admonished her to avoid emotion in her testimony but that trial counsel did not explain why this was important. Petitioner assumed it was so that she did not appear hard or cold to jurors.

Petitioner recalled a meeting during which she told trial counsel she was not ready to testify because she was not prepared. Petitioner claimed that she did not know "what was important to bring out" during her trial testimony and that trial counsel told her to "go ahead and get it over with." Petitioner stated that, if she had been more prepared for trial, she would have given better answers to questions during her testimony. Petitioner blamed her inability to control her emotions during her testimony on the lack of preparation for trial. Petitioner also claimed that remaining emotionless made her look like she was "some harsh person who didn't have any remorse." Petitioner testified that she "always" brought up to trial counsel that she needed to be prepared, but he did nothing to resolve her concern.

With regard to Petitioner's complaint that trial counsel failed to fully investigate potential defenses by interviewing witnesses, Petitioner testified that trial counsel did not fully explore the prior acts of violence the victim perpetrated against Petitioner. Petitioner acknowledged that at least one instance of violence was introduced at trial but that the testimony of Gina Strickland and her boyfriend would have added testimony at trial to rebut the State's theory that she fabricated her abuse. Petitioner provided their names and contact information to trial counsel prior to trial, but trial counsel failed to call them to testify at trial. Petitioner claimed that trial counsel did not want to use the witnesses because he thought they were merely "drinking buddies." Petitioner disagreed, explaining that these two people were lifelong friends with good reputations who could have substantiated her claims of abuse.

Petitioner complained that trial counsel was ineffective in failing to seek disqualification of the district attorney. Petitioner explained that the district attorney represented Petitioner in a divorce in the 1990s. After the divorce, Petitioner worked at a law firm that also employed the district attorney. While at that firm, Petitioner worked closely with a lawyer who was accused of improprieties. The lawyer ultimately left the firm. Petitioner left around the same time. Petitioner tried to get a job with the district attorney's firm sometime afterward and was denied a position on the basis that she had been associated with the lawyer who had left the firm on bad terms. Petitioner perceived that the district attorney had some animosity toward her and did not think that he should be associated with her prosecution. According to Petitioner, trial counsel disagreed, telling

- 3 -

her that he would not file a motion because it was not a big deal. Petitioner testified that trial counsel told her that the district attorney was not going to offer her a plea deal.

With regard to trial counsel's failure to file a continuance, Petitioner complained that trial counsel should have asked for a continuance because he was forced to call a defense witness out of order, prior to the opening statements. Dr. Jerry Devane, the emergency room physician who treated Defendant, had to testify out of order. Petitioner claimed that she did not learn until the day of trial that the witness would testify prior to opening statements. Petitioner felt that the jury was not "able to connect what his testimony was even about" because they had no frame of reference for his testimony.

Petitioner complained that trial counsel did not object when the State referred to the victim as her "husband" even though they weren't married. Petitioner also complained that trial counsel did not object when the district attorney referred to her as a "murderer" throughout the trial.

Petitioner called Gina Strickland to testify at the post-conviction hearing. Ms. Strickland testified that she knew Petitioner both personally and professionally. They met in 1996 when Petitioner was working at a law firm. When Petitioner started dating the victim, Petitioner and the victim hung out together with Ms. Strickland and her "domestic partner" Mike Newman, until Ms. Strickland and Mr. Newman decided they did not like the atmosphere around the couple. Specifically, Ms. Strickland recalled that the victim referred to Petitioner as property. When she addressed the concern with Petitioner, she "felt like [Petitioner] was withholding" information and took up for the victim. Ms. Strickland thought that Petitioner's "whole personality and demeanor was changing" during her relationship with the victim. Ms. Strickland recalled one particular event that was concerning. At Ms. Strickland's mother's birthday dinner, about one month prior to the victim's death, Ms. Strickland noticed bruises on Petitioner's arm. One of the bruises "looked like a hand print." Petitioner told Ms. Strickland she did not want to talk about it, that it was "nothing." Ms. Strickland was never contacted by trial counsel or anyone else about the case.

Trial counsel testified that he began practicing law in December of 1970. His office staff estimated that he had been involved as trial counsel in over 170 homicide cases. His practice area varied, but at the time of the hearing he was involved in representing defendants in two first degree murder cases. Trial counsel testified that the Administrative Office of the Courts authorized him to be qualified as an expert on at least five occasions, at least one time with regard to ineffective assistance of counsel.

- 4 -

Trial counsel could recall at least two prior cases in which he was accused of being ineffective in addition to Petitioner's case. Trial counsel represented Petitioner after she was arrested up through the filing of the motion for new trial, but not on appeal.

Trial counsel explained that he has "different initial procedures" based on how articulate his client is in each case. He usually begins with an in-depth examination of the facts before looking at the legal issues. Trial counsel found Petitioner to be "very bright" and "responsive" and "obviously very, very . . . distraught." Trial counsel thought that Petitioner "was an abused person" but that there were "significant issues regarding . . . the reliability of her statements because of the degree of intoxication. . . ." Despite trial counsel's concerns, he "sincerely" believed that Petitioner was a victim and that there was a good argument for self-defense.

Trial counsel recalled that Petitioner's version of the events was "very consistent with her testimony" and "supported by many of the photographs." Trial counsel recalled "intense discussion" about the case "over an extended period of time" beginning on "day one until the date of the trial and during the course of the trial." During trial, trial counsel recalled Petitioner became "greatly troubled as the case progressed."

Trial counsel felt that Petitioner was involved in the trial and made "a substantially, significant decision" when she decided "whether or not to accept or reject the disposition which the State had offered." Trial counsel recalled a plea offer to "plead guilty to voluntary manslaughter, with a [ ] to 10 years," waiving the Range I sentence and a "potential alternative sentence," with the manner of service to be determined by the trial court. Trial counsel did not recall specifically how or when the offer was communicated to Petitioner but thought that the offer was extended in writing. Trial counsel testified that the offer was "extended [to] and was discussed with" Petitioner by both him and another lawyer who was assisting trial counsel on the case before Petitioner rejected the offer. Trial counsel recollected that they "talked about [the offer] on almost, well, a fairly regular basis for many months, several months." Trial counsel described Petitioner as "firm in her refusal to consider" the offer but did not recall if the State withdrew the offer. On cross-examination, trial counsel confirmed that the "firm" offer from the State was communicated to Petitioner in writing. Trial counsel was concerned that Petitioner was rejecting the offer because of the evidence that was likely to be presented at trial showing that Petitioner waited to call the police after she killed the victim. Trial counsel testified on cross-examination that both he and his law partner discussed the offer with Petitioner. Trial counsel was "not surprise[d]" that there was nothing in the file to reflect that the State made an offer. Trial counsel recalled that they were "trying to obtain a three to six offer" but came back with a "[t]hree to ten range."

Trial counsel testified that Petitioner identified people she thought could be witnesses at trial and that there was at least one witness that trial counsel could not get to appear. Trial counsel remembered that this witness was not "of substantial significance." Trial counsel did not specifically recall being told about witnesses Gina Strickland or Mike Newman. Trial counsel testified that if a witness was identified, his typical practice was to locate the witness and interview the witness to discern what their testimony would be at trial. Trial counsel explained that he made the choice to call a witness based on the evidence and the potential for the witness to be helpful.

Trial counsel testified that he reviewed all aspects of the case with Petitioner, including her version of the events and areas of cross-examination that were possible. Trial counsel testified that "[i]t was almost a daily, if not two or three times a day, in which [they] would pause and go over something that [Petitioner] had reviewed from the discovery and how that would impact her case." Trial counsel was literally "steps away" from Petitioner at the office. Trial counsel testified on cross-examination that it would be "absolutely, horribly inaccurate" if his billing records reflected that he only talked to Petitioner for about three hours about the case. Trial counsel stated that they "talked almost on a daily basis" about the case.

Trial counsel did not recall Petitioner asking him to seek recusal of the district attorney. Trial counsel was aware that Petitioner knew the district attorney but did not recall Petitioner ever asking about recusal. In fact, trial counsel "never saw a legal, justifiable, ethical reason" to seek recusal of the district attorney. Additionally, trial counsel did not recall Petitioner requesting that he seek a continuance because she was not prepared for trial. In fact, trial counsel testified that he "spent literally hours and hours and hours, probably more time involved in discussions with a client than any other case [he had] ever had."

Trial counsel recalled that one of the witnesses, Dr. Jerry Devane, was "unable to be present" for part of trial and that his testimony was favorable to Petitioner so it was important for the jury to hear his testimony. Trial counsel felt that it was a tactical decision to call Dr. Devane prior to opening statements and felt it would be to Petitioner's advantage because the jury would probably remember what he had to say.

Trial counsel testified that he did not object when the State referred to the victim as "husband" during opening statements because he "knew that it was coming out in evidence." Similarly, trial counsel did not recall statements made by the State in closing about certainty as to the evidence.

When asked by the post-conviction court, trial counsel admitted that there were "some things" he wished he would have done differently at Petitioner's trial. Trial counsel

- 6 -

thought he should have "[a]ctually obtained an evaluation" to see if Petitioner qualified as a battered spouse. Additionally, trial counsel wondered whether an accident reconstructionist would have been beneficial.

On cross-examination, trial counsel acknowledged that the State made certain statements during cross-examination that were not objected to at trial. Trial counsel did not recall making a specific "strategic decision" not to object. Trial counsel noted that his lack of objection did not prohibit the issue from being raised on appeal "under all circumstances" but acknowledged the failure to object definitely sets a "higher bar" for success on appeal.

Trial counsel was asked about a witness excluded from testifying at trial about gangs. Trial counsel admitted that he "perhaps should have" made an offer of proof after the witness was excluded but acknowledged that "the [victim's] gang affiliation was absolutely testified to fully in the evidence." In fact, the victim's Limited Few gang vest was even introduced as an exhibit at trial because he was wearing it at the time of his death.

Trial counsel was also asked on cross-examination why he did not seek suppression of evidence with regard to the search warrant and trespass issue. Trial counsel testified that his research revealed that the motions would have either been frivolous or unsuccessful.

Petitioner called Dan Ripper as a rebuttal witness. Mr. Ripper testified that he was a lawyer in Tennessee and Georgia, practicing about 50% criminal law. He testified as an expert in criminal trial practice. Mr. Ripper was "surprised" to see Dr. Devane testify out of order, "before anything." In his opinion "you lose the value of the witness by putting the witness on out of order, without appropriate context and background."

The post-conviction court denied relief. In an extensive order, the post-conviction court detailed the procedural history, noting that the resolution of Petitioner's claim was delayed by the global pandemic. The post-conviction court held that "[m]any claims made by Petitioner delve into the minute details of evidentiary admissibility and are not proper for post-conviction consideration." The post-conviction court acknowledged Petitioner's concession that she attempted "to couch substantive evidentiary issues raised by pleading in the light of how trial counsel acted, or failed to act, in furtherance of her claim that she was deprived the effective assistance of counsel." As a result, the post-conviction court dismissed "all issues raised" that "do not involve the abridgment of a constitutional right."

The post-conviction court determined that Petitioner's complaints with regard to the legality of the search warrant were waived for failure to litigate because none of the proof at the hearing or argument from counsel raised this issue beyond the ineffective assistance

of counsel claim. Moreover, the post-conviction court noted that officers were likely entitled to intrude onto Petitioner's property due to exigent circumstances and that the search warrant complied with "established law."

As to Petitioner's claims of ineffective assistance of counsel, the post-conviction court determined that all witnesses were credible with the exception of Petitioner. In fact, the post-conviction court deemed Petitioner's testimony "patently unreasonable" because she was "motivated to testify in a manner to bolster her post-conviction claims" which revealed "bias." The post-conviction court "disregarded" all of Petitioner's "testimonial evidence unless corroborated by other witnesses or other proof."

The post-conviction court took notice of Petitioner's 28-year career as a paralegal, finding it "not credible to believe she was not actively involved and immersed in her own case" when she actually was "employed and working full time at her trial counsel's office during the pendency of her case," giving her unfettered access to her trial counsel, "well beyond the access most clients have to their lawyers." The post-conviction court noted multiple instances where Petitioner contradicted her own testimony, considering each one in turn. The post-conviction court determined Petitioner contradicted her own testimony on whether she met with and discussed trial testimony with counsel, prepared for trial with counsel, discussed trial strategy with counsel, discussed potential witnesses with trial counsel, and informed anyone about her alleged domestic abuse.

The post-conviction court did not find credible Petitioner's insistence that she asked trial counsel to seek recusal of the district attorney. Instead, the post-conviction court determined that trial counsel's testimony, that recusal was never discussed, was credible. The post-conviction court found no bias on the part of the district attorney against Petitioner despite her testimony to the contrary, determining that Petitioner's allegations were "unreasonable" and "unsupported by even a single negative interaction or negative conversation between the two."

The post-conviction court specifically determined that trial counsel conveyed and discussed the plea offer with Petitioner prior to trial, noting that the best practice would have been for trial counsel to memorialize Petitioner's rejection of the offer in writing. However, the post-conviction court discussed trial counsel's September 2018 letter, sent to Petitioner after conviction, in which trial counsel felt that the settlement offer was Petitioner's best option.

The post-conviction court concluded that trial counsel was "not deficient in any regard." Trial counsel met with Petitioner on multiple occasions, was extremely qualified, attempted to pursue evidence related to the victim's gang membership, obtained discovery, secured a plea offer, considered and filed multiple pretrial motions, "aggressively and

vigorously sought to exclude the video recording of Petitioner being extremely belligerent and hostile during medical treatment at the scene," attempted to use a scheduling conflict of Dr. Devane to Petitioner's advantage, effectively cross-examined witnesses, and established a self-defense theory.

The post-conviction court determined that trial counsel was not ineffective for failing to seek suppression of the search warrant and being unsuccessful in the attempt to suppress Petitioner's recorded statements. The post-conviction court found that trial counsel's tactical decision that attempting to suppress the search warrant was "fruitless" was reasonable and that trial counsel "aggressively" sought suppression of Petitioner's statement. In other words, trial counsel was "adequately informed" and prepared "well beyond that expected of a reasonably competent and constitutionally effective criminal defense attorney."

Petitioner's complaint about trial counsel's failure to object to portions of unavailable witness Mr. Hybarger's prior recorded testimony were not supported by which individual statements were objectionable or how they would have impacted the outcome of trial. As such, the post-conviction court deemed those issues waived.

The post-conviction court found that Petitioner's complaint about trial counsel's failure to obtain a mental health expert were not supported by proof to show how any such expert testimony would have benefitted Petitioner. Moreover, Petitioner failed to present any proof or witnesses with regard to this issue at the post-conviction hearing. Similarly, Petitioner's allegation that trial counsel was deficient for not making an offer of proof on gang testimony at trial was not supported by any witness testimony at the post-conviction hearing.

With regard to Petitioner's major issue with trial counsel's calling Dr. Devane out of order, the post-conviction court noted that Petitioner called Mr. Ripper to testify as an expert at the post-conviction hearing. While the post-conviction court accredited Mr. Ripper's testimony disagreeing with trial counsel's decision, the post-conviction court noted that it was a matter of trial strategy on behalf of trial counsel that did not amount to deficient performance.

The post-conviction court discerned that the majority of Petitioner's complaints about the district attorney were the result of his method of prosecuting the case. Specifically, the post-conviction court found that references to Petitioner and the victim being married was a "mistake of fact and not some concentrated effort to manipulate the jury" because all the evidence at trial pointed only to the fact that Petitioner and the victim were dating.

The post-conviction court determined that the district attorney's repetitive labeling of Petitioner as a "murderer" could possibly "rise to the level of objectionable or prejudicial conduct" but acknowledged that Petitioner was, in fact, on trial for first degree murder and there was no dispute that Petitioner fired the gunshot that caused the death of the victim. The post-conviction court determined that specific references to Petitioner as a murderer were permissible within the context of the trial. To the extent Petitioner argued that trial counsel was ineffective for failing to object to statements made by the district attorney during trial, the post-conviction court determined that trial counsel was not ineffective. The post-conviction court deemed the actions of trial counsel reasonable trial strategy and noted that the jury was instructed to disregard statements of counsel not supported by the evidence.

Regarding the testimony of Ms. Strickland, the post-conviction court determined that nothing of "probative value" in her testimony established prejudice to Petitioner. The post-conviction court questioned whether Ms. Strickland's testimony, that she saw evidence of abuse on Petitioner's body prior to the homicide, would have even been relevant because it "amounted to mere suspicion of abuse rather than fact" and was not "material to Petitioner's defense."

As a result of the post-conviction court's findings, the petition was denied. Petitioner appealed.

*Analysis*

On appeal, Petitioner raises four issues.[1] Petitioner argues: (1) trial counsel was ineffective for calling Dr. Devane to testify prior to opening statements; (2) trial counsel was ineffective for failing to interview Ms. Strickland prior to trial and calling her at trial; (3) trial counsel was ineffective by failing to have Petitioner evaluated by a mental health expert and presenting evidence on battered spouse syndrome; and (4) trial counsel's "multiple deficiencies" resulted in prejudice to Petitioner. The State insists that the post-conviction court properly denied relief.

Post-conviction relief is available for any conviction or sentence that is "void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." T.C.A. § 40-30-103. In order to prevail in a claim for post-conviction relief, a petitioner must prove his factual allegations

---

[1] To the extent that Petitioner raised issues in her petition or at the post-conviction hearing that she does not raise on appeal, those issues are waived. *Ronnie Jackson, Jr. v. State*, No. W2008–02280–CCA–R3–PC, 2009 WL 3430151, at *6 n.2 (Tenn. Crim. App. Oct. 26, 2009) ("While the [p]etitioner raised additional issues in his petition for post-conviction relief, he has abandoned those issues on appeal."), *perm. app. denied* (Tenn. Apr. 16, 2010).

by clear and convincing evidence. T.C.A. § 40-30-110(f); *Momon v. State*, 18 S.W.3d 152, 156 (Tenn. 1999). "Evidence is clear and convincing when there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence." *Hicks v. State*, 983 S.W.2d 240, 245 (Tenn. Crim. App. 1998). On appeal, a post-conviction court's findings of fact are conclusive unless the evidence preponderates otherwise. *Vaughn v. State*, 202 S.W.3d 106, 115 (Tenn. 2006). Accordingly, questions concerning witness credibility, the weight and value to be given to testimony, and the factual issues raised by the evidence are to be resolved by the post-conviction court, and an appellate court may not substitute its own inferences for those drawn by the post-conviction court. *State v. Honeycutt*, 54 S.W.3d 762, 766-67 (Tenn. 2001). However, the post-conviction court's conclusions of law and application of the law to the facts are reviewed under a purely de novo standard, with no presumption of correctness. *Fields v. State*, 40 S.W.3d 450, 458 (Tenn. 2001).

Both the Sixth Amendment to the Constitution of the United States and article I, section 9 of the Tennessee Constitution guarantee the right of an accused to the effective assistance of counsel. *See Davidson v. State*, 453 S.W.3d 386, 392-93 (Tenn. 2014). In order to sustain a claim of ineffective assistance of counsel, a petitioner must demonstrate that counsel's representation fell below the range of competence demanded of attorneys in criminal cases. *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975). Under the two-prong test established by *Strickland v. Washington*, 466 U.S. 668, 687 (1984), a petitioner must prove that counsel's performance was deficient and that the deficiency prejudiced the defense. *See State v. Taylor*, 968 S.W.2d 900, 905 (Tenn. Crim. App. 1997) (noting that the same standard for determining ineffective assistance of counsel applied in federal cases also applies in Tennessee). Because a petitioner must establish both elements in order to prevail on a claim of ineffective assistance of counsel, "failure to prove either deficient performance or resulting prejudice provides a sufficient basis to deny relief on the claim." *Henley v. State*, 960 S.W.2d 572, 580 (Tenn. 1997). "Indeed, a court need not address the components in any particular order or even address both if the [petitioner] makes an insufficient showing of one component." *Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996) (citing *Strickland*, 466 U.S. at 697).

The test for deficient performance is whether counsel's acts or omissions fell below an objective standard of reasonableness under prevailing professional norms. *Strickland*, 466 U.S. at 688; *Henley*, 960 S.W.2d at 579. This Court must evaluate the questionable conduct from the attorney's perspective at the time, *Hellard v. State*, 629 S.W.2d 4, 9 (Tenn. 1982), and "should indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," *State v. Burns*, 6 S.W.3d 453, 462 (Tenn. 1999).

Even if a petitioner shows that counsel's representation was deficient, the petitioner must also satisfy the prejudice prong of the *Strickland* test in order to obtain relief. The question is "whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair." *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993). A petitioner must show that there is a reasonable probability "sufficient to undermine confidence in the outcome" that, "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Burns*, 6 S.W.3d at 463 (quoting *Strickland*, 466 U.S. at 694).

*Pre-trial Testimony*

First, Petitioner complains that trial counsel was ineffective for presenting Dr. DeVane's testimony prior to opening statements. Specifically, Petitioner argues that the jury was deprived of "any context to understand the importance of this testimony for the defense." Petitioner complains that there was no tactical advantage gained by putting the witness on the stand prior to the opening statements and the defense was prejudiced because the State's most damaging evidence, the video of Petitioner's transport from the scene, was unrebutted because Dr. Devane testified prior to any of the proof. The State argues that Petitioner failed to prove prejudice in counsel's strategic decision to present the testimony out of order and that the post-conviction court properly determined that trial counsel's representation was not ineffective solely because his trial strategy was unsuccessful.

At the post-conviction hearing, trial counsel testified that he made the tactical decision to call Dr. Devane prior to the opening statements because the doctor was unavailable to testify any other time. Trial counsel determined that it would be more beneficial for the jury to hear the testimony in person rather than via a recorded deposition. Counsel testified that it was a matter of "primacy," that the jury would hear the testimony of Dr. Devane first and would be more likely to remember the testimony. The post-conviction court accredited trial counsel's testimony that it was a tactical decision to call Dr. Devane that was made after reflection and judgment. The post-conviction court determined that Petitioner failed to show prejudice by trial counsel's decision and we agree. The jury was properly instructed by the trial court, the jury heard opening statements immediately after Dr. Devane's testimony and was able to put that testimony into context prior to the proof, and the proof against Petitioner was overwhelming. Although a peculiar trial procedure situation, given the forgoing discussion, Petitioner is not entitled to relief on this issue.

*Interviewing Witnesses*

Next, Petitioner insists trial counsel was ineffective for failing to interview and/or present Ms. Strickland as a witness at trial and that the post-conviction court improperly determined Ms. Strickland's testimony would not have changed the outcome of trial. Petitioner argues that failing to call Ms. Strickland could not be deemed a "strategic decision" because trial counsel never interviewed the witness. The State disagrees, arguing Petitioner failed to show prejudice.

At the post-conviction hearing, trial counsel could not recall if Petitioner told him about Ms. Strickland. Petitioner claimed she not only told trial counsel about the witness, who allegedly would have testified that Petitioner was the victim of abuse at the hands of the victim, but that she suggested trial counsel call Ms. Strickland at trial. The post-conviction court discredited Petitioner's testimony and accredited the testimony of trial counsel. Even though Ms. Strickland testified at the post-conviction hearing, the post-conviction court deemed Ms. Strickland's testimony possibly irrelevant and determined that the testimony, even if admitted at trial, would not have changed the outcome of the trial. The evidence does not preponderate against the judgment of the post-conviction court. Ms. Strickland testified that her friendship with Petitioner changed after Petitioner and the victim started dating. Ms. Strickland also testified that she disapproved of the victim's membership in the Limited Few and that she saw a bruise on Petitioner about one month prior to the victim's death. Ms. Strickland did not testify that the victim abused Petitioner. We fail to see how Ms. Strickland's testimony would have or could have changed the outcome at trial as there was overwhelming evidence of Petitioner's guilt and other evidence to suggest domestic abuse, including the testimony of Dr. Devane. Petitioner has not presented clear and convincing evidence of prejudice and is not entitled to relief on this issue.

*Expert Witness Testimony*

Next, Petitioner complains that trial counsel was ineffective for failing to present expert testimony about battered spouse syndrome. Petitioner also claims trial counsel was ineffective because he failed to "have Petitioner evaluated by a mental health expert."

First, any claim that trial counsel was ineffective for failing to secure a mental health evaluation is waived. Petitioner does not support this claim with any argument. Tenn. R. App. P. 27(a)(7)(A); Tenn. Ct. Crim. App. R. 10(b). Further, Petitioner did not present an expert on battered spouse syndrome at the post-conviction hearing. "As a general rule, this is the only way the petitioner can establish that . . . the failure to have a known witness present or call the witness to the stand resulted in the denial of critical evidence which inured to the prejudice of the petitioner." *Pylant v. State*, 263 S.W.3d 854, 869 (Tenn. 2008) (citing *Black v. State*, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990). Petitioner has not met her burden of proof. Consequently, she is not entitled to relief on this issue.

- 13 -

*Cumulative Error*

As a final argument, Petitioner argues that she is entitled to post-conviction relief on the basis of the cumulative error doctrine. Because we have found no error at all, Petitioner's claim of cumulative error has no legs.

*Conclusion*

For the foregoing reasons, the judgment of the post-conviction court is affirmed.

_____
TIMOTHY L. EASTER, JUDGE